The next matter is Christel Grimsley v. Manitowoc Co Inc et al. Mr. Englert.  My name is Robert Englert. I'm appearing on behalf of Christel Grimsley as administratrix of the estate of Ricky Lee Grimsley. I'd ask to reserve four minutes for rebuttal. Granted. Your honors, we are here today following the dismissal of Plaintiff's well-pled complaint, which was clear on its face as asserting separate claims for negligence, and in which the district court, Judge Caldwell, essentially demanded the trial of the case, not even the summary judgment, but the trial of the case on the pleadings, and simply asked too much of a plaintiff in this case, or in any case, given the facts that were known and available to be pled. And there weren't a lot of facts available to be pled, right? Correct. I mean, I understand the requirements of the case law here. We apply a functional analysis. If that doesn't resolve the issue, then we go on to look to an issue of control. Is that right? Your honor, those are the two standards that Pennsylvania applies in determining the employer under the Workers' Compensation Act. Did you, in your pleading, actually plead that any one of the entities that you named was the employer here? We did not, your honor, nor were we under the impression that we were required to do so. In any of the case law that's available, it's not normally the standard. In fact, Thompson v. Fair, which is the most recent district court case on this issue, the employer was not identified as the employer. In Joyce v. Superfresh, which is this court's precedent from 1987, in the underlying complaint there was no specific allegation as to which entity was the employer for Workers' Compensation Act purposes. Do you think a lawyer then could omit information from the pleading, name several different entities, and thereby at least get past the motion to dismiss phase and do discovery, because they avoid anybody being subject to the immunity? Could a strategic lawyer choose to do that? Should we be concerned about that? I think you should be concerned about that. I think before Iqbal and Twombly, it was easier. The standard is now plausibility. At one point in the papers, after being accused of artful pleading or playing games, I wanted to make clear to the court that this was careful pleading. What Ms. Grimsley knew was that something was going on up there, and what we tried to present to the court was the little evidence that we had that there was something happening with these different entities, and our background diligence research… You said the different entities. Correct. I assume you're not speaking of a different entity as a technical matter, because your pleading suggests, and this was the problem, that in reality it's not a different entity at all. Actually, Your Honor, that was not the purpose or the intention of the pleading. In fact, the one verminate issue indicates that these entities continue to exist as separate legal entities, and it's an issue of control in terms of the Workers' Compensation Act. As an indicia of control matter comes up, and also if there were going to be issues raised for a statutory employer, if the property owner, which in this particular case appeared to be Grove, maintained control over the property where other things were happening and the defendants then claimed that Manowac was an employer, there's different formulations that this can take place. There was no intention. Certainly, counsel understands how to plead an alter ego claim. That wasn't done here. We have four separate counts for negligence. But what I was going back to, under the plausibility standard, we wanted to give the court evidence so that we were not the lawyers being accused of simply shotgunning names of defendants or, as Judge McKee indicated in the earlier argument, throwing things against the wall to see what would stick. We have some information here that indicates that who was paying salaries at various times are changing and that these entities that we have named are in the direct structure of the Manowac organization at that facility at that time. So is your position, is your argument anything more than just, all right, we have pled a complaint that meets the requirements of Iqbal and Twombly, but we don't know enough facts. We need to find more facts. And a motion to dismiss was not the appropriate vehicle to use to get rid of this case. Yes. I mean, is it any more complicated than that? Unequivocally, yes. Well, yes or no? Yes, it is. It is no more complicated than that. And the pleading is drafted. It doesn't have the kinds of factual averments such that the functional analysis of the right to control test that Judge Smith spoke of could be applied here. Is that correct? Correct. And as I had started to say earlier in response to that question, that the functional analysis and the indicia of control are often applied at the summary judgment phase and, in fact, in Joyce they were even factual as inputs, right? Yes, Your Honor. Could it be a situation where, in terms of this veil-piercing thing, if we were ever to get to that, that you could have two or more corporate entities that were the same corporate entity for certain purposes but distinct legal entities so that a piercing veil would be inappropriate for other purposes? Would that be so? So I'm trying to get at if you had a shareholder suit against Corporation A, would it be appropriate to pierce a corporate veil to get to the alter ego of that corporation? But in another legal context, in a different legal theory, that would not be appropriate. And I'm trying to get at some language in Keno that I'll ask a reporter about. Well, this Pennsylvania Supreme Court said that that doctrine of piercing corporate veils is not recognized for worker's compensation. And that's the issue here. There may well be the circumstance that Your Honor has hypothesized, but for the Workers' Compensation Act there is no reverse piercing, certainly by defendants, and there can only be one employer. And that's the purpose of the functionality test or the industry control. And that's limited specifically to the analysis under the Pennsylvania Workers' Compensation Act. I have just a small question that just goes over. We'll kind of come back to this. I just want to confirm diversity. Is the estate and Mrs. Grimsley both deemed Maryland citizens? Yes. Okay. Thank you. While we're all talking, I want to make sure we have authority over the case. Thank you for that. She's a stick up for details. I think we would have it even if they were Pennsylvania, but maybe not complete diversity. But, yes, Your Honor, they are both from Maryland. The estate has been filed in Maryland. Okay. With respect to this alter ego, it seemed that the district court was looking at the language in your pleading and was focused on things like manitowic, controlled, and exerted dominion and control. Is that your understanding of the language the district court was leaning on to suggest that these were pled by plaintiff as alter egos? Or was this something else the district court was looking at to reach that conclusion? Your Honor, I believe that the district court was looking at the motion to dismiss to reach the issue of alter ego liability. Rather than the allegations in the complaint. Correct. It was first raised in the motion to dismiss. In the response, it was called out to the court that it was a misstatement. I believe there's been an argument raised in Apelli's brief that we didn't correct that soon enough or clearly enough, so therefore we should be a stop from challenging it now. But we did certainly claim that the argument that was raised in the motion to dismiss was a misstatement of what was intended by the complaint. And in any case, the complaint, by its plain language and by its terms of being four separate counts against individual entities, does not contemplate any sort of alter ego liability. Okay. You said manitowic shooting Grove as a brand. Right. And that's a function of the way that they appear to have done business. So it's akin to when we look at, for instance, Kiel, where we had the detonator manufacturing facility, that the parent company was essentially the facility, but the sub had been formed for the purpose of supplying the manufacturer with its inventory. Here, and again, standing from the outside without any factual discovery whatsoever, manitowic has acquired these companies. And there's Grove, there's Potain, and there are others that are not immediately coming to mind, but they're all now stamped with manitowic. They are all now stamped as manitowic cranes, even though the manitowic copper crane is that large red cage crane that was in one of the papers that was filed. And the entire facility that was once a Grove facility has now been rebranded as manitowic. So it was an intention to say that manitowic at the parent level is exerting its control over this facility, not necessarily over that entity. That was the purpose of making sure and saying that they were distinct legal entities. Is it your understanding that the concept, I think Judge McKee was driving a little bit at this, that this concept of alter ego liability may be applicable in other contexts, but here it's different because the case law suggests even if there's a corporate relationship, there still has to be a practical analysis of the functions furthered by that employee on behalf of that corporation or the industry in control, such that even if there were alter egos under a different type of case, that won't apply here so that you can get your, quote, one employer identified, get the immunity for that. Is that your understanding of how the Pennsylvania law would apply here? I agree with your assessment of that, Judge Schwartz, in that if in a different circumstance it might be veil-piercing or corporate alter ego, here for Workers' Compensation Act purposes, there can be only one employer. So if the court were to determine that the case should be reinstated, discovery progresses. At some point, factual material is gathered by the plaintiff that identifies either the function or the right to control edition. The scenario here could be a dismissal because of immunity of one of the defendants, but the rest of the case potentially could continue, and then we can also figure out what's going to happen with Mr. Malott and figure out who his employer is. Correct, Your Honor. Thank you. Thank you. We'll have you back on rebuttal. Thank you. Ms. Hershberger. Good morning, Your Honors. Stephanie Hershberger, on behalf of the Appalese Grove and the Manitowoc defendants. Ms. Hershberger, what should we do with that statement? I'll quote it directly from Keogh. I referenced it. It was written to your colleague, the adversary. But in Keogh, the Pennsylvania Supreme Court said on page 754, I'm quoting, Moyan makes it clear that in Pennsylvania a parent corporation and its subsidiary must be regarded as separate entities in regards to the Worker's Compensation Act. And it cites to the relevant page of Moyan, although when I checked that site I didn't see that language, but that doesn't matter because that was the Supreme Court's interpretation in the same case. Given that, what do we do here and how can we possibly affirm what the district court did? I'm forgetting the problems of pleading in the early stage of dismissal. What do we do with that? No, Your Honor. It doesn't apply in this case because in this case it's plaintiffs that's attempting to pierce the defendant's corporate bail. The doctrine of the Pennsylvania Supreme Court is saying that the parent and the subsidiary must be regarded as separate entities in regards to Worker's Compensation Act cases. And that's the only situation in which that could arise in the Worker's Compensation Act. We're not talking about shareholders suits or a bankruptcy situation or anything like that for predators to get at a pot of money. It's specifically talking about Worker's Compensation Act cases. Right. And they said that in the context of defendants who came into court, plaintiffs were not trying to pierce the corporate bail to get to the parent companies. The parent company came in and said, basically, we want to pierce our own corporate bail in order to get this Worker's Compensation immunity. And I do want to correct something. Which creates some public policy issues. Whether or not a corporation can, on the one hand, seek the protection of a corporate format and then come in and say, well, here, ignore it. We want to be immune. We don't want to be seen as separate entities. Correct, Your Honor. And that's not what we're doing in this case. They pled the piercing of the corporate bail in their complaint. If they had not, we would not be in this position right now. So how did they do that? Your Honor, I will say. But where did they explicitly claim piercing of the corporate bail? I will quote to you. In Pennsylvania, piercing of the corporate bail is under the order EGO. And this is the Botnewick case from the Pennsylvania Supreme Court. I'm not asking about law. I read the complaint over the weekend. And I could not see anywhere where explicitly plaintiffs were seeking to pierce the bail. Well, I was trying to explain. I'm sorry. You don't have to use the language piercing of the corporate bail or alter EGO. You look at the allegations. Remember, we were talking when Mr. Engler was up at the podium about how we now live in an era of quick ball, as some people sometimes refer to it, which means that you are required to be much more explicit in your pleading. In fact, shouldn't we, in looking through the lens of Crombley and Iqbal, say, well, since one is required to plead more specific facts, plead with greater specificity, and that hasn't been done here, isn't the reasonable conclusion that despite the averments of various corporate entities here, plaintiff has certainly not pled a piercing of the corporate bail? I would respectfully disagree. If you look at paragraphs 22 and 39, which are then incorporated into all four accounts against all four of the Manitowoc defendants, they said, at all times herein, Manitowoc controlled and exerted its domination and control over Grove. It didn't say the facility over Grove, by and through MCC, and or Manitowoc cranes. And then it also said, in paragraph 22, Manitowoc exerted such domination and control over Grove U.S. LLC, that even though Grove U.S. LLC continued to exist as a separate legal entity, it was at all times relevant here to, treated by Manitowoc as a brand, rather than as an independent legal entity. And that's why I wanted to cite to the Pennsylvania Supreme Court case, that uses almost exact language that they used in their complaint for how you assert an alter ego claim. It's paraphrased a little bit, but it's very clear. There's no other reason to have that language in there. What case was that? Excuse me, Your Honor? What case was it? It's the Bottenwick v. Credit Exchange. It's in our brief, 213 Atlantic 2nd, 349. That's not a workman's comp case. No, it's talking about what you need to do to pierce the corporate bail. And Judge Smith was asking me about what needed to be pleaded for that. And then they took it through and carried it through into incorporating it into each count. If they intended to plead separate counts, and they wanted to plead an alter ego, and then separate counts, they could have done that. And I would also like to point out, Your Honors, that contrary to what they're claiming, plaintiffs actually admitted in their initial brief to this court that they were proceeding under abuse of corporate process. You ask us to affirm the district court. The district court's basis for its conclusion is that these were alter egos, right? That they were pleading it. Correct, Your Honor. So how are you going to, not you personally, but how is your client at some subsequent lawsuit not going to be stopped from saying we're not alter egos? You have to defend the district court's position as the appellee in this case. You are put in the position of saying we're totally alter egos when it comes to this, and we'll get back to whether that matters under Keel. But then in some subsequent circumstance, you're going to erect the barrier. How can your client reconcile those two positions? Your Honors, we repeatedly stated in our briefs and our filings with the court that it is not our position that we are acting as alter egos. We filed our motion to dismiss based on plaintiff's allegations that we were alter egos. And did the district court ever actually determine that you were alter egos? No. Other than to construe the pleading as having been sought, a determination of piercing the corporate veil or alter ego statement. Yes, the court ever made a determination that we were the alter egos. Now, putting aside that, we'll accept that the pleadings may convey this alter ego sentiment. How do you get around Keel? I know that Judge McKee was asking that. I just don't know how you get around Keel. Because Keel seems to tell us that in the worker's context, even if there's intimate corporate relationships, there's generally speaking an employer based upon functionality or condition of control. I don't know how you get around Keel. I would first like to say that I don't really think it's correct that there's only one employer in the worker's compensation context. No, you could ask that to employers, but for the purposes of this case, there can only be, as far as I understand it, there seems to be only one employer. We're not talking about subcontractors and all that. In Keel, the plaintiff sued the subsidiary, and then I believe it was a parent corporation. They didn't have any allegation of piercing the corporate veil. They were not trying to get to the parent through piercing the corporate veil. But what does it matter based upon the propositional law that case tells us and other cases like it, which tells us in this context, this corporate intimacy is of no consequence. We've got functionality. We've got condition of control. The Pennsylvania Supreme Court in that case said it's not fair to allow corporations to build themselves up into these separate legal entities, and then when it's convenient for them to say, well, we weren't acting that way. We were abusing our corporate forms, so we're one and the same. That's not what we're doing in this case, so there's no inherent unfairness in this case. We didn't bring in piercing the corporate veil. Plaintiffs did through their complaint. We are responding to the only thing we have, which is their complaint. Let's assume that the case is reinstated. Discovery occurs, much like our master adversary. Facts are developed such that plaintiff has to concede one of these entities is the workers' comp employer. That entity is out. The case proceeds with the remaining corporate entities. I'll put Mr. Mallott aside for a second. At that point, are you concerned that there's going to be an argument that there should be a piercing of corporate veil, and then you're going to take the position, don't pierce? I'm trying to play out how you're going to be able to use that keel doctrine, as you've described it, as we didn't assert piercing, and then you're going to try to defend against it. Plaintiffs are asserting it in their complaint, so of course if it proceeds and we are reversed, we are going to defend against that. Well, you might have a serious judicial problem if you were to try that, a big one, because you're relying upon there being but a single entity. You're saying he pled but a single entity, and I'm sure you wouldn't know. Well, he didn't think that these were the same corporations. He said they were acting. They treated Grove as... That's what piercing is. Right. Exactly. But, fortunately, it's the same thing. If it's treated, it's treated. With due respect, Your Honor, we fought our motion to dismiss based on what plaintiffs are alleging in their complaint. We have not found an answer admitting or denying anything. We're saying if this is true and plaintiffs are asserting piercing of the corporate veil, then we're entitled to workers' compensation immunity. That's the estoppel issue. I don't think there's any estoppel, with due respect, for that reason. You may be right. It's an interesting question. Yes, it is, Your Honor, and you're absolutely right that the cases that have looked at it have all said that you can't get the workers' compensation if the defendant is coming in. There has been no case that I could find where the circumstances in this case arose where the plaintiff is asserting it and then the defendant stepped in. In fact, it's actually fair the way this is because I can tell you if Grove, for some reason, which we're saying is the employer under the Workers' Compensation Act, did not have workers' compensation insurance, plaintiffs would easily be able to go, and I'm not saying they could prove it, but they could go after the Nanitowoc defendants for coverage under the alter ego theory if they chose to. So the Pennsylvania Supreme Court and the other appellate courts in our jurisdiction have consistently said if you can be on the hook for liability for workers' compensation, then you have immunity. It's the quid pro quo. Some recent opinions from the Pennsylvania Supreme Court suggest they don't like that, but they recognize that's the law. As to the, I just wanted to briefly address the employer situation, I agree that in federal court you do not have to file very specific pleadings at all. And I think in this case, if plaintiff had just filed a complaint and said, you know, Mr. Grimsley was in the Grove building and he got hit by a crane and set forth a different entities in the relationship, we would have to do additional discovery on the employment situation. Well, then why shouldn't he be allowed to amend his complaint? Well, because he never asked to initially, and even after he filed his motion for reconsideration and asked to, he never submitted what he would swear to in a complaint that would change the facts in this case. For instance, he never said to the court what fact he had that would show any entity other than Grove was Mr. Grimsley's employer at the time of the accident in 2013. And I do want to point out one additional factor that the court looked at, and I think is very important, is that OSHA, plaintiff attached to their complaint, the findings of OSHA from their investigation after this accident, finding that Grove was the employer. And they held them responsible as the employer. But that report didn't give us any factual basis for that conclusion. No, but, you know, OSHA... It's not preclusive in any way, is it? You're not arguing that, are you? No, I'm saying it's one more factor that the court looked at. The indicia of control looks at not only the factors there, but multiple factors. So those all combined. And in light of the fact that they didn't plead any other fact, if they have another fact to show that perhaps the Manitowoc company was the employer, then plead it. But they didn't do that. And that's why when the court looked at all the facts, and I think they didn't plead it because there are no facts. They tried to bring up things in their brief, such as Grove didn't pay workers' compensation and things like that, which were outside the record and totally incorrect. There's nothing in the complaint to support that any entity other than Grove was the actual workers' compensation employer. So it's your position that Grove is the actual workers' comp employer? What's your factual basis from the complaint? All we have is the fact that Grove paid him. That's all we have in the complaint. It's on his W-2 forms. It's on his wage stubs. Mr. Brinson was actually injured while they were moving a Grove crane, not one of the lattice ones that Manitowoc... Remember, we can only look at what's in the pleading. But my point is that none of that tells us, we know from the case law, that pay alone is not an indicator of control. The fact that he was on property that's also cohabitated, for lack of a better word, by these other entities, there's insufficient facts from which we could do a condition of control analysis. We certainly can't do a functional analysis. Even the district court said they couldn't do that, right? Right, but I believe that the OSHA finding, if you look at OSHA cases where they have to find the employer responsible, they actually talk about it's a matter of control, the right to control. And they attach that to their complaint, saying that OSHA found them to be the employer. So I think that's an additional factor that sort of tips it over the edge. Do you want to ask any other questions? Thank you. I would just request that you please affirm. Thank you very much, Ms. Hershberg. You have to affirm this to be a better lawyer. You're not going to make the same promise. Good morning, your honors. I would respond to one point that was raised by Judge McKee concerning estoppel. Certainly, your honor, I would be and Mrs. Grimsley would be estopped from arguing anything other than we are not pursuing an alter ego liability theory. If I tried to do that at any point forward in this court, I might as well take down my shingle and go home. That's not what we're doing. There are four entities here, many of which, I think all of which, are multimillion dollar, if not multibillion dollar entities. We've pled direct liability claims as against them, and discovery will reveal that one of them may be liable. If the only one that's liable is the employer, then the Workers' Compensation Act dictates that this case should be dismissed, but we ought to be entitled to the discovery to determine that. Then why, if your theory is not alter ego, you're expressly disclaiming that and you have in your briefs to us, why include in the complaint the two allegations your adversary pointed out, and I'll accept your representation that it mimics language from alter ego cases. You need to be in control. Because of the facility, the facility where this took place, all of these entities are operating, I think you said cohabitating, or shorts, and that it's Manitowoc who's ultimately responsible for all of them on the ground, not as a matter of legal alter ego, but in terms of the entity on the ground that's responsible for safety. Thank you. With that, I would just ask that this court reverse the district court's judgment and reinstate the complaint. Thank you. Thank you. Thank you very much, counsel, for your helpful arguments. We'll take the matter under review.